IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 13-cv-02996-CBS

ROBERT L. SCHOENGARTH II,

              Plaintiff,

v.

CAROLYN W. COLVIN,

              Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Shaffer

      This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security's final decision denying Robert Schoengarth's ("Plaintiff") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Pursuant to the Order of Reference dated July 17, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).  (*See* Doc. No. 20).  The court has carefully considered the Complaint (filed November 1, 2013) (Doc. No. 1), Defendant's Answer (filed January 22, 2014) (Doc. No. 6), Plaintiff's Opening Brief (filed April 2, 2014) (Doc. No. 10), Defendant's Response Brief (filed June 18, 2014) (Doc. No. 13), Plaintiff's Reply (filed July 7, 2014) (Doc. No. 14), the entire case file, the administrative record, and applicable case law. For the following reasons, the court affirms the Commissioner's decision.

## BACKGROUND

In March 2010, Plaintiff filed an application for disability benefits, alleging a disability onset date of June 1, 2009. (*See* Social Security Administrative Record (hereinafter "AR") at 168-72, 173-79).   Plaintiff alleges he became disabled due to chronic pain syndrome, major depressive disorder, arthritis, chronic pancreatitis, and anxiety. (AR at 255). Plaintiff was born on April 23, 1963, and was 46 years old on the date of his alleged disability onset. (AR at 168). He has a high school education and has worked in a variety of jobs including meter reader, meter repair, route driver, retail sales, tire sales, telemarketer, and kitchen/restaurant manager. (AR at 265, 333). After his initial application was denied, Plaintiff requested a hearing, which was held by video on May 18, 2012, before an Administrative Law Judge ("ALJ"). (*See* AR at 37, 92-93*)*.

Plaintiff was represented by counsel at the hearing and testified that he had pain in his lower and middle back, as well as in his left shoulder through his left hand. (AR at 43-44). He further testified that his back pain was constant and that it would get worse with cold weather, making it difficult to walk. (AR at 44). He stated that his pain made it difficult to go grocery shopping, and that by the time he finished shopping he would need to lay down for three to four hours. (AR at  44-45). Plaintiff stated that he could walk for 15 minutes at a time, stand for five to ten minutes, and sit for five to ten minutes. (AR at 46-47). He estimated that he would spend, on average, six hours laying down every day. (AR at 48). Plaintiff also reported that on four or five occasions per month, he would stay in bed for the entire day. (AR at 48). Plaintiff said he was depressed due to the pain and his inability to do the things he used to do. (AR at 49).   He said that when he was depressed, he did not like being around other people. (AR at 49).

At the hearing, Susan L. Creighton-Clavel testified by telephone as an impartial vocational expert ("VE").   The ALJ asked the VE to assume hypothetically that  a person of

Plaintiff's age, education, and work experience had the following limitations: (1) able to do light work; (2) never use ladders, ropes, or scaffolds; (3) occasionally climb ramps or stairs; (4) occasionally stoop, crouch, kneel, and crawl; (5) frequently reach overhead with his left arm and hand; (6) frequently handle objects as gross manipulation with his left arm and hand; (7) frequently finger objects as fine manipulation with his left arm and hand; (8) must avoid extreme cold; (9) must avoid all use of hazardous machinery; (10) must avoid all exposure to unprotected heights; (11) limited to simple, routine and repetitive tasks, with only occasional changes in the work setting; and (12) cannot have strict production quotas. (AR at 58). The VE testified that an individual with those limitations could work in a pizza delivery position; however, he could not perform work involved in any of Plaintiff's other previous jobs. (AR at 59-60).

The VE then identified three other "light" exertional jobs that someone with those limitations could perform and testified about the number of each position in the regional and national economy: (1) information clerk (1,600 Colorado; 83,000 National); (2) usher (1,800 Colorado; 83,000 National); and (3) office helper (1,800 Colorado; 112,000 National). (AR at 59-60). The ALJ then posed a second hypothetical in which he asked the VE to assume that the same individual would be sedentary. (AR at 60). The VE testified that the information clerk and the officer helper, although categorized as "light" exertion, could be performed while sitting down. (AR at 60). The VE also testified that, under those conditions, the individual would be able to perform work as a (1) telephone clerk (1,800 Colorado; 83,000 National); (2) table worker (150 Colorado; 13,000 National); and (3) charge account clerk (650 Colorado; 32,000 National).

The ALJ then asked the VE to assume that the individual would — in addition to regularly scheduled breaks — need two or more unexcused breaks to lay down for 15 minutes.

(AR at 61). The VE testified that, under such a limitation, all work would be precluded. The VE also testified that all competitive employment would be precluded if the individual required two or more unexcused or unscheduled absences per month. (AR at 61).

Plaintiff's counsel then asked the VE to assume that — instead of being able to handle and finger frequently — the individual from the ALJ's hypothetical could only handle and finger occasionally. (AR at 61-62). The VE concluded that all of the previously identified "sedentary" jobs, as well as the information clerk and the officer helper, would be eliminated. (AR at 62).

On June 27, 2012, the ALJ issued his decision denying benefits. (AR at 11-36). The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since June 1, 2009. (AR at 16). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: pancreatitis; arthritis; disorder of the back; and depression. (AR at 16). At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. (AR at 16-17).

The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl; he is limited to frequent overhead reaching with the left upper extremity; he is limited to frequent handling of objects, that is gross manipulations with the left upper

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

> extremity; he is limited to frequent fingering of objects, that is fine manipulation of items no smaller than the size of a paper clip, with the left upper extremity; he must avoid extreme cold; he must avoid all use of hazardous machinery and all exposure to unprotected heights; his work is limited to simple, as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks; he can only have occasional changes in the work setting; and he cannot have strict production quota emphasis on a per shift rather than per hour basis.

(AR at 17-18). In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's medical records. The ALJ found that Plaintiff's allegations of pain were "inconsistent with the objective medical evidence," which indicated an attempt by Plaintiff to "exaggerate the severity of his symptoms." (AR at 19). The ALJ further found that Plaintiff's subjective complaints were "disproportionate to the objective medical findings in the record." (AR at 19). In addition, the ALJ credited the opinion of Dr. Richard Carson, an internal medicine consultative examiner, who examined Plaintiff. (AR at 23). Dr. Carson noted that there was good evidence that Plaintiff was "malingering" with his physical examination (AR at 634). The ALJ also credited the opinion of Dr. Morris Susman, a state agency medical consultant, who reviewed Plaintiff's medical records and prepared a physical RFC assessment. (AR at 25). Dr. Susman concluded that Plaintiff's symptoms were not disabling and that Plaintiff had the ability to perform unskilled work with light exertional demands. (AR at 73). The ALJ also found Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms to be "less than fully credible." (AR at 19).

At step four, based on the RFC set forth above, the ALJ found that Plaintiff could not perform any past relevant work. (AR at 27-28). At step five, the ALJ found: "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR at 28).

Specifically, the ALJ found that Plaintiff could work as an information clerk, an usher, or an officer helper. (AR at 29). Because there were a significant number of jobs that Plaintiff could perform, the ALJ found that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. (AR at 29). Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff requested review of the ALJ's decision. (AR at 7-10, 341-49). The Appeals Council denied his request for review on September 3, 2013.  (AR at 1-5).  The decision of the ALJ then became the final decision of the Commissioner.  20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted).  Plaintiff filed this action on November 1, 2013. (Doc. No. 1).  The court has jurisdiction to review the final decision of the Commissioner.  42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards, and whether it is supported by substantial evidence in the record as a whole.  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003).  The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v.*

*Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted).  The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ erred in the following ways: (1) the RFC is not supported by substantial evidence; (2) the commissioner failed to apply the correct legal standard in evaluating the medical opinion evidence; and (3) the conclusion that Plaintiff is capable of performing other jobs in significant numbers is not supported by substantial evidence. These arguments are not persuasive.

**A.      Whether the RFC was based on substantial evidence**

The RFC is an assessment of what a claimant is still "functionally capable of doing on a regular and continuing basis, despite [her] impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751.  An ALJ must make specific RFC findings based on all the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). In determining the scope of a claimant's RFC, an ALJ's assessment must "consider all of [a claimant's] medically determinable impairments . . , including [his] medically determinable impairments that are not severe." 20 C.F.R. § 404.1545. An impairment is medically determinable if it is "established by

medical evidence consisting of signs, symptoms, and laboratory findings, not only [a claimant's] statement of symptoms." 20 C.R.F. § 404.1508.

On appeal, Plaintiff contends that the ALJ's RFC was not supported by substantial evidence because the ALJ failed to consider all of the medical evidence. He also argues that the RFC is not supported by substantial evidence because the ALJ did not include any limitations regarding Plaintiff's social functioning limitations. (Doc. 10 at 20-23). The court does not agree.

**1. Failure to explicitly consider all medical evidence**

Plaintiff contends that the ALJ failed to consider all of his impairments. Specifically, in support of this contention, he argues that the ALJ (1) did "not cite any treatment records after September 2011 in his decision;" (2) failed to discuss specific treatment notes discussing Plaintiff's pain; and (3) did not "mention the 2012 x-ray and MRI findings which documents 'significant foraminal as well as central stenosis at C5-6 and C6-7.'" (Doc. 10 at 20-21). The court is not persuaded.

While "[t]he record must demonstrate that the ALJ considered all of the evidence," there is no requirement that the ALJ "discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal citation omitted). The ALJ specifically stated that he fashioned the RFC "after careful consideration of the entire record." (AR at 17). The Tenth Circuit has held that where the ALJ's discussion of the evidence and the reasons for his conclusions demonstrate that he has adequately considered Plaintiff's alleged impairments, the court should take him "at [his] word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009); *see also Flaherty*, 515 F.3d at 1071 (the court should take a lower tribunal at its word when it declares that it has considered a matter). Here, the ALJ's decision contains a detailed discussion of much of the evidence that Plaintiff submitted, a discussion of how the ALJ weighed the evidence, and a thorough account

of how the ALJ arrived at his conclusion. (AR at 18-27). Thus, the court takes the ALJ at his word that he considered all of the evidence, even those records that were not explicitly discussed. The ALJ's failure to recite and explicitly evaluate each piece of evidence was not error.

Moreover, Plaintiff does not explain how these specific medical records have any bearing on his functional limitations such that the ALJ — in setting the RFC — should have discussed them in greater detail. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (stating that a medical condition need not be considered where the claimant has failed to identify resulting functional limitations that would affect the ALJ's analysis); *see, e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (stating that the "mere presence" of a medical condition is not enough; rather, that condition, "alone or in combination with other impairments, must render [the] claimant unable to engage in any substantial employment" (brackets and internal quotations marks omitted)). Thus, Plaintiff has not established any error in the ALJ's failure to discuss these alleged conditions.

### 2. Failure to include a social functioning limitation

Plaintiff also contends that the ALJ erred in failing to include a limitation related to Plaintiff's social functioning. Specifically, he argues that "[b]ecause the ALJ failed to include all of [his] impairments, [the] RFC assessment is not supported by substantial evidence." (Doc. 10 at 22-23).[2] The court disagrees.

First, it is not apparent that the RFC lacked a limitation related to Plaintiff's social functioning. In his consultative psychological examination, Dr. Maximillian Wachtel noted that,

---

[2] In his reply brief, Plaintiff also seems to argue that the ALJ erred in failing to include any limitations regarding his abilities to be punctual or complete a normal work day or work week without interruptions. In addition, Plaintiff offers new arguments in support of his contention that the RFC should have included a social limitation. However, because these arguments are raised for the first time in his reply brief, the court does not consider them. *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1175 (10th Cir. 2000) (noting the general rule that courts do not consider issues and arguments raised for the first time in a reply brief).

in addition to other moderate limitations, Plaintiff had moderate social interaction limitations. (AR at 640). Dr. Wachtel did not elaborate on this conclusion, nor offer any specifics on how Plaintiff was socially limited. (AR at 640). During the ALJ's discussion of Plaintiff's mental RFC, the ALJ stated that he had considered the medical opinions, Plaintiff's testimony, and Plaintiff's subjective complaints, and ultimately concluded that he would give Plaintiff the benefit of the doubt. As such, the ALJ found that Plaintiff was limited to having only occasional changes in the work setting and that he could not have strict production quotas. (AR at 26). Thus, the ALJ did incorporate a limitation that was consistent with the various mental assessments — including Dr. Wachtel's — as well as Plaintiff's subjective complaints. Plaintiff has not offered any explanation as to how this limitation fails to address his specific social functioning limitations.[3]

Furthermore, even if this particular limitation could be construed as lacking a social functioning limitation, there is evidence in the record to support this determination. Dr. Mark Berkowitz, the State agency psychological consultative examiner, also reviewed Plaintiff's medical records. Dr. Berkowitz specifically concluded that Plaintiff did not have any social interaction limitations. (AR at 77). The ALJ was entitled to look to, and rely upon, the opinions of Dr. Berkowitz in fashioning the RFC. *See* Social Security Ruling 96-6p, 1996 WL 374180, at *1-2 (July 2, 2996); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (a non-examining physician's opinion is an acceptable source, which the ALJ is entitled to consider). The ALJ found that Dr. Berkowitz's assessment was reasonable and supported by Plaintiff's medical record. To the extent that Plaintiff asks this court to reweigh Dr. Berkowitz's opinion, it is

---

[3] To the extent that Plaintiff attempts to flesh out this issue with new arguments in his reply brief, the court does not consider those contentions because they have been waived. *Plotner*, 224 F.3d at 1175.

beyond the scope of the court's limited review. *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

In addition, the court noted that Plaintiff's daily activities were not limited to the extent one would expect given the complaints of disabling symptoms. (AR at 19). As it is relevant here, the ALJ found that Plaintiff activities of daily living included tending to his personal and grooming needs, shopping, going to doctor's appointments, and talking to others. (AR at 19; *see also* AR at 277). Such activities certainly support the ALJ's RFC determination with regard to Plaintiff's social functioning capabilities. Furthermore, in the social activities section of his *Adult Function Report*, Plaintiff stated that he had never been fired or laid off due to problems with others, and he stated that he was able — at least minimally — to get along with authority figures. (AR at 279). Finally, the court noted that much of Dr. Wachtel's assessment, regarding Plaintiff's low GAF score[4], was based primarily on Plaintiff's subjective complaints, which were determined to be less than fully credible (AR at 19).   An ALJ's determination regarding a claimant's credibility are generally considered binding on appeal. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).

Consequently, the court concludes that there is substantial evidence in the record to support the ALJ's RFC determination.

**B.     Consideration of medical source opinions**

Plaintiff also claims that the ALJ committed reversible error in evaluating the opinions of both his treating physical health provider and his treating mental health provider. The court perceives no reversible error.

---

[4] The Global Assessment of Functioning (GAF) "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of [social, occupational, and psychological] functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (Text Revision 4th Ed. 2000) ("DSM-IV")).

Plaintiff contends that the ALJ erred in his consideration of the opinions of Mr. Robert Cooley, PA-C, and Mr. Layne Jacobsen, LPC. In May, 2012, Mr. Cooley completed a statement regarding Plaintiff's physical ability to do work related activities in which he opined that Plaintiff had physical limitations that would preclude him from any gainful employment.[5] (AR at 979-86). In April, 2012, Mr. Jacobson completed a statement regarding Plaintiff's mental ability to perform work related activities. He also assessed functional limitations that would preclude Plaintiff from any gainful employment. (AR at 974-77). The ALJ concluded that neither opinion had any probative value and rejected them on the grounds that they were (1) not issued by an acceptable medical source; (2) conclusory; (3) unsupported by facts in the record; and (4) based upon Plaintiff's subjective complaints. (AR at 25, 27). Although the Plaintiff suggests that these grounds are insupportable, the court disagrees.

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Indeed, Plaintiff heavily cites case law supporting this proposition throughout his brief. However, Mr. Cooley is a physician's assistant and Mr. Jacobson is a licensed professional counselor; thus, they are not considered "acceptable medical source[s]." *See* Social Security Ruling 06-03p, 2006 WL 2329939 at *1

---

[5] Plaintiff relies heavily on the argument that Mr. Cooley's opinion outweighs that of the consulting examiner. (Doc. 10 at 16-18). This argument seems to suggest that Mr. Cooley issued an opinion that Plaintiff has a disability. However, it is worth noting that Mr. Cooley's opinion states that Plaintiff's limitation first became present in January, 2012. (AR at 984). Plaintiff contends that he became disabled in June 2009. Furthermore, Mr. Cooley states that those functional limitations would not last for 12 consecutive months. (AR at 984). Thus, the limitations Mr. Cooley advocates for would not be considered disabling. *See* 42 U.S.C. § 423(d)(1)(A); *see also Gutierrez v. Colvin*, ___ F.3d ___, ___, 2014 WL 4437280 at *4 (D. Colo. Sept. 9, 2014) ("To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months). Consequently, Plaintiff's heavy reliance on Mr. Cooley's opinion is perplexing.

(SSA Aug. 9, 2006). As such, neither can issue medical opinions, *see* 20 C.F.R. § 404.1527(a)(2), nor be considered a treating source whose opinions must be evaluated to determine whether they are entitled to controlling weight, *see* C.F.R. § 404.1513(d). *See also* Social Security Ruling 06-03p, 2006 WL 2329939 at *2; *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).

Nonetheless, the opinions of "other sources" such as Mr. Cooley and Mr. Jacobson still must be considered, applying the same factors as are generally used to assess treating source opinions. Social Security Ruling 06-03p, 2006 WL 2329939 at *4 (SSA Aug. 9, 2006); 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6). The regulations do not require the ALJ to specifically discuss all of the factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Among these factors are whether the opinion is consistent with and supported by the other evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.") & 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Here, the ALJ specifically invoked both of these considerations. Specifically, the ALJ characterized Mr. Cooley's opinion as "conclusory" and unsupported by the record. (AR at 26). With regard to Mr. Jacobson's opinion, the ALJ also noted that it provided little in the way of explanation, was unsupported by the record, and was not even supported by Mr. Jacobson's own clinical findings. (AR at 27). Thus, the ALJ did not reject these opinions merely because they were not issued by acceptable medical sources.

Moreover, the ALJ's determination that the opinions of Mr. Cooley and Mr. Jacobson were conclusory has ample support in the record. Both of these opinions were submitted on "check-off" forms that were unaccompanied by any written reports. Indeed, even in the spaces

13

allotted for further explanation, neither Mr. Cooley nor Mr. Jacobson elaborated on their conclusions in any meaningful way. Perhaps cognizant of the fact that these forms are quite bare, Plaintiff argues that they are "based upon [his] extensive treatment records," suggesting that the ALJ should have considered whether Mr. Cooley's and Mr. Jacobson's treatment records supported these forms. As an initial matter, neither Mr. Cooley nor Mr. Jacobson specifically referenced their treatment notes, or *any* of Plaintiff's medical records, in support of their conclusions. And even assuming *arguendo* that the ALJ had an obligation to consider these opinions in conjunction with the providers' respective treatment notes, these notes do not undermine the ALJ's determination regarding the weight to be afforded to the opinions.

In Mr. Jacobson's treatment notes, he consistently indicated that Plaintiff's mental status was within the normal limits. (AR at 784-87, 789, 791, 796, 798-99, 801). Indeed, on several occasions, Plaintiff apparently told Mr. Jacobson that he was feeling better and was interested in seeking employment and had even had a number of job interviews. (AR at 786, 787). Thus, the treatment notes provide little support for the extreme limitations advocated by Mr. Jacobson and any failure, on the part of the ALJ, to analyze them does not constitute reversible error.

With regard to Mr. Cooley's treatment notes, he indicated that, following an injection procedure, Plaintiff had marked improvement in his pain. In July, 2011, Plaintiff was able to rise from sitting to standing and walk with ease. (AR at 855). He was also able to heel and toe walk with ease. (AR at 860). In addition, Mr. Cooley noted that Plaintiff had significantly improved range of motion in his back. (*Id.*) Mr. Cooley's notes also state that Plaintiff rated his pain as 2 out of 10. And in October, 2011, following a report from Plaintiff that he was walking and biking every day, Mr. Cooley released Plaintiff to return to work. (AR at 890-91). Because the evidence fails to demonstrate that Mr. Cooley's treatment notes supported the marked and extreme

limitations that he endorsed, any failure to specifically examine those records does not warrant remand. *See Williams v. Chater*, 1995 WL 490280 at *2, 64 F.3d 670 (10th Cir. 1995) (Table) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal.").

Moreover, Mr. Cooley's treatment notes regarding Plaintiff's frequent pain were based almost entirely upon Plaintiff's subjective complaints (*see* AR at 830-33, 933-49), which the ALJ found not credible. (AR at 26). *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) ("[A] claimant's subjective complaint of pain is by itself insufficient to establish a disability.") (internal citations omitted). The ALJ normally determines the weight and credibility of testimony, and these determinations are generally considered binding on the reviewing court. *See White*, 287 F.3d at 909. The ALJ's credibility determination, however, must be supported by specific evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (discussing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

Here, the ALJ considered the entire record and concluded that Plaintiff's "allegations concerning the intensity, persistence and limiting effects of his symptoms [were] less than fully credible." (AR at 19). In reaching this conclusion, the ALJ noted a number of inconsistencies in Plaintiff's statements. (*Id.*) For example, although Plaintiff testified that Vicodin — which he takes every day — caused his stools to be hard, he also testified that he suffered from diarrhea throughout the week. (AR at 50-51).   And in spite of Plaintiff's alleged impairments, his described daily activities — shopping, caring for his son, making meals, tending to his grooming needs, doing the dishes, starting the laundry, and driving himself to doctor's appointments — were consistent with the ability to obtain and maintain employment. (*See* AR at 274-76, 282-83).

In addition, the ALJ credited Dr. Carson's assessment, wherein he noted that there was good evidence that Plaintiff was "malingering" with his physical exam. (AR at 19). In his assessment, Dr. Carson noted that although Plaintiff stated that he could not walk more than three to five minutes due to the pain, and that he had a walker, Plaintiff arrived at his examination without any assistive devices. (AR at 632-33). Dr. Carson also noted that although Plaintiff grimaced and indicated that he was in pain, Plaintiff was able to bring his legs up to take off his shoes and socks; had no trouble getting up from a sitting position; moved normally when he was standing; had full range of motion of his cervical spine; had a normal gait; could toe, heel, and tandem walk; and could hop on both right and left leg without any apparent pain. (AR at 633-34).   Thus, there was specific evidence in the record to support the ALJ's credibility assessment.

The ALJ also discredited Mr. Cooley's and Mr. Jacobson's opinions on the basis that they were not supported by other evidence in the record. As discussed above, the ALJ thoroughly reviewed and considered all of Plaintiff's medical records (*see* AR at 17-27), as well as the various opinions of record regarding the limitation's imposed by Plaintiff's physical and mental impairments. (AR at 23-24, 25, 26). Plaintiff's argument (Doc. 10 at 16-20) that these assessments were erroneous — and that Plaintiff's medical records do, in fact, support Mr. Cooley's and Mr. Jacobson's assessments — is essentially a request to reweigh the evidence, which this court may not do. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Conflicts in the evidence are for the ALJ to resolve, and he did not err in discharging that duty here. *See Rios v. Astrue*, 848 F.Supp.2d 1283, 1289 (D. Colo. 2101) (citing *Reyes v. Brown*, 845 F.2d 242, 245 (10th Cir. 1988)).

**C.      Sufficient jobs in the national economy that Plaintiff can perform**

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Thompson v. Astrue*, 987 F.2d 1482, 1487 (10th Cir. 1993).  Here, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR at 28-29).

Plaintiff argues that this finding is not supported by substantial evidence. The court disagrees. At the hearing, the ALJ heard testimony from the VE. The ALJ posed hypotheticals to the VE that involved all of the physical aspects of the RFC ultimately adopted by the ALJ. (*See* AR at 58-61). The VE testified that someone with those restrictions could work as an information clerk, an usher, or an officer helper. (AR at 59-60).

Plaintiff contends that the hypothetical posed by the ALJ was erroneous. (Doc. 10 at 23-24). However, as discussed above, this court has concluded that the RFC was based on and supported by substantial evidence. Because the hypothetical question was based on the RFC, and because the RFC was supported by the record, the court concludes that the ALJ did not err in posing its hypothetical.

Therefore, the court concludes that the ALJ's step five finding — that there were significant jobs in the national economy that Plaintiff could perform — is supported by substantial evidence.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Mr. Schoengarth was not disabled within the meaning of Titles II and

XVI of the Social Security Act and therefore not eligible to receive Disability Insurance Benefits or Supplemental Security Income benefits.   Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his own fees and costs.


DATED at Denver, Colorado, this 14th day of April, 2015.


BY THE COURT:


s/Craig B. Shaffer
United States Magistrate Judge